IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEFFREY CRAIG PORTER, JR; KRP (a juvenile) | CASE NO. |
| Plaintiffs, v. | |
| DARBY DEPUTY MARSHAL JOHN RINGER, BOTH AS AN INDIVIDUAL AND IN HIS CAPACITY AS DARBY DEPUTY MARSHAL; DARBY MARSHAL LARRY ROSE, BOTH AS AN INDIVIDUAL AND IN HIS CAPACITY AS DARBY MARSHAL; RAVALLI COUNTY SHERIFF'S DEPUTY DANIEL MENDONCA, AS AN INDIVIDUAL AND IN HIS CAPACITY AS A RAVALLI COUNTY DEPUTY SHERIFF; RAVALLI COUNTY SHERIFF'S LIEUTENANT JONATHAN MOLES, AS AN INDIVIDUAL AND IN HIS CAPACITY AS A RAVALLI COUNTY DEPUTY SHERIFF; TOWN OF DARBY MONTANA; | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

COMES NOW the Plaintiffs Jeffrey Craig Porter, Jr. and, KRP, a juvenile, by

Complaint 1

-

and through undersigned counsel and for their Complaint, state as follows:

## I.  PARTIES

1.  During the time relevant to this Complaint, Jeffrey Craig Porter, Jr, (hereinafter "Mr. Porter) resided at 412 South Water Street Apt. #11 Darby, Ravalli County, Montana. Mr. Porter was a citizen of Montana.

2.  During the time relevant to this Complaint, KRP resided at 412 South Water Street Apt. # 11 Darby, Ravalli County, Montana. KRP was a citizen of Montana. KRP is Mr. Porter's minor son. At the time of the facts described in this Complaint, KRP was 12 years old.

3.  During the time relevant to this Complaint, Deputy Marshal John Ringer (hereinafter "Ringer") was employed by the City of Darby, Montana, Darby Police Department as a uniformed law enforcement officer.

4.  During the time relevant to this Complaint, Marshal Larry Rose (hereinafter "Marshal Rose") was employed by the City of Darby, Montana, Darby Police Department as the Chief of Police.

5.  During the time relevant to this Complaint, Ravalli County Sheriff's Lieutenant Jonathan Moles was employed by the Ravalli County Sheriff's Department as a uniformed law enforcement officer.

Complaint 2

-

6.      During the time relevant to this Complaint, Ravalli County Sheriff's Deputy Daniel Mendonca was employed by the Ravalli County Sheriff's Department as a uniformed law enforcement officer.

7.      The Town of Darby is located in Ravalli County Montana.

## II.    PROCEDURAL HISTORY

8.      On September 27, 2019, Plaintiffs' counsel sent Mr. Porter's and KRP's claims and demand letters to Regina Plattenberg, Clerk and Recorder for Ravalli County and Evette Paul, Clerk for the town of Darby, Montana pursuant to Montana Code Annotated § 2-9-301(3).

9.      On January 30, 2020, The Board of Ravalli County Commissioners denied Mr. Porter's and KRP's claims.

10.     The town of Darby never responded to Mr. Porter's and KRP's claims. Mr. Porter considers the town of Darby's non-response a denial of his claim.

## III. VENUE and JURISDICTION

11.     This Court has  federal question jurisdiction to hear the claims under 42 U.S.C. § 1983 pursuant to 28 USC § 1331,  and civil rights jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4).

12.     This court has supplemental jurisdiction over accompanying the State law claims pursuant to 28 U.S.C. § 1367 as they arise from the same case or controversy as

Complaint 3

the federal question and civil rights claims and share a common nucleus of operative facts.

13.     Venue is proper in the United States District Court for the District of Montana Missoula Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## IV.   FACTS COMMON TO ALL CLAIMS

14.     Plaintiff realleges and incorporates all prior paragraphs as if fully restated in this Section.

15.     Mr. Porter is a disabled army veteran who has muscular dystrophy.

16.     KRP is a juvenile who suffers from emotional and cognitive disorders.

17.     Ringer had previously interacted with KRP at his elementary school and was aware from that prior interaction that KRP suffers from emotional issues.

18.     On or about December 14, 2018, Ringer responded to a noise complaint at 412 South Water Street Apt. # 11 in Darby, Montana (hereinafter Apt. #11).

19.     Ringer approached the door of Apt. # 11 to investigate the noise complaint. He stood outside the door of Apt. #11 where he immediately received a cell phone call from Marshal Rose.

20.     He answered the cell phone call and walked away from the door of Apt. # 11 to conduct a conversation with Marshal Rose.

Complaint 4

21.     While on the phone, Ringer stated, "[i]t's not real loud, but I'll knock on the door and see what's going on." Ringer ended the conversation and returned to the door of Apt. # 11 and knocked. Ringer did not announce that he was law enforcement while knocking on Mr. Porter's door.

22.     Mr. Porter, while sitting on his couch, immediately opened his door to answer Ringer's knock.

23.     Mr. Porter, KRP and A.B.(initials used to protect privacy) sat calmly on the couch as they played video games.

24.     When Mr. Porter opened his door, Ringer thrust his foot through the entrance of Apt. # 11 and placed his foot as to barricade Mr. Porter from closing the Apt. # 11 door.

25.     Mr. Porter politely informed Ringer to not come in his home unless Ringer had a warrant.

26.     Mr. Porter stood up to speak with Ringer at the entrance of Apt. # 11.

27.     Mr. Porter politely requested Ringer to "please step back."

28.     Ringer did not have a warrant. Ringer did not retreat from the home even though Mr. Porter politely requested that he do so.

29.     A verbal exchange occurred while Ringer stood with his foot inside Apt. #11.

Complaint 5

-

30.    Mr. Porter repeatedly requested Ringer to step out of his home and politely invited Ringer to speak with him outside of Mr. Porter's and KRP's home.

31.    Ringer actually stepped into Mr. Porter's home. Mr. Porter attempted to walk outside of his home and politely requested that Ringer step outside with him.

32.    Ringer would not leave and would not allow Mr. Porter to leave his home.

33.    Ringer remained in Mr. Porter's home and started to make commands. Ringer escalated the situation as he elevated his voice and would not retreat from Apt. # 11.

34.    Ringer shoved Mr. Porter back into Apt. #11 and stepped further into Mr. Porter's home.

35.    After an approximately two minute conversation, A.B. stood up from the couch and began filming the confrontation.

36.    Ringer got more agitated and demanded that A.B. stop shining the light from his cell phone in Ringer's eyes.

37.    A.B. did not stop filming.

38.    Ringer then shoved Mr. Porter, knocking him back several feet, before knocking the phone from A.B.'s hand.

39.    Mr. Porter again requested Ringer leave his home, but Ringer responded he was there "on a valid reason" and he would not leave.

Complaint 6

-

40.     Mr. Porter again requested Ringer to leave his home and attempted to politely escort Ringer out of the home to speak with Ringer outside. Ringer would not leave and stated he did not need a search warrant to be in Porter's home.

41.     Ringer said he did not care that he did not have a search warrant.

42.     Mr. Porter informed Ringer that he did not have Mr. Porter's permission to be inside Apt. #11.

43.     Ringer responded to Mr. Porter by stating that he did not recall asking for permission.

44.     KRP witnessed all the events that took place.

45.     Ringer called for back-up and other officers responded to Apt. #11 including Marshal Rose, and Ravalli County Sheriff's officers, Lieutenant Jon Moles and Deputy Mendonca (collectively "officers").

46.     The officers handcuffed Mr. Porter in front of KRP. One of the officers drew a taser on Mr. Porter while KRP stood behind Mr. Porter. In an effort to de-escalate the situation and protect his son, Mr. Porter directed KRP to go into Mr. Porter's bedroom.

47.     The officers swarmed Apt. # 11 and entered Mr. Porter's bedroom where Mr. Porter had sent KRP to be safe.

48.     KRP sobbed and was distraught throughout the events.

Complaint 7

-

49.     Mr. Porter continually requested the officers not harm KRP and advised the officers that KRP would not resist them.

50.     Mr. Porter informed the officers he had muscular dystrophy.

51.     Mr. Porter remained respectful throughout the altercation.

52.     The officers arrested A.B. and escorted him out of Apt. # 11.

53.     The officers left Mr. Porter's home and the vicinity without removing the handcuffs they had placed on Mr. Porter's wrists.

54.     Mr. Porter believed the officers would return to *remove the handcuffs that remained around his wrists.*

55.     Mr. Porter then got to his knees and rested against a wall within Apt. #11 realizing he had been left handcuffed inside his home with KRP who was severely distressed and crying.

56.     Mr. Porter sat inside his home handcuffed, not knowing when officers would return.

57.      Officers did not return to retrieve the handcuffs from Mr. Porter for 1 – 2 hours.

58.     Mr. Porter eventually made the decision to slip his hands from the handcuffs in order to care for his son and himself. He was able to slip the handcuffs off because his muscular dystrophy has atrophied his hand muscles.

Complaint 8

-

59.     The decision to slip his hand cuffs off caused Mr. Porter a great deal of anxiety and distress as he was forced to make a decision to either care for his son and himself or remain handcuffed in his home hoping the officers would return to remove the handcuffs. Mr. Porter realized he could be handcuffed in his home for hours, so he slipped the handcuffs off his wrists.

60.     In  entering Mr. Porter's apartment illegally and leaving Mr. Porter handcuffed in his apartment unable to care for himself or his juvenile child KRP, the officers subjected Mr. Porter and KRP to unusual indignity and violated his constitutional rights.

61.     Ringer and Marshal Rose returned to Mr. Porter's apartment on December 18th, 2018, in an effort to interview Mr. Porter on camera and limit their liability for their actions on December 14th.

62.     During this interview on December 18, 2018, Ringer questioned Mr. Porter's account of how long he was left handcuffed and claimed to have returned to the apartment within 20 minutes of leaving, though Ringer's body camera footage appears to show well over an hour had elapsed.

63.     During this interview on December 18, 2018, in a poorly veiled attempt at intimidation, Marshal Rose "informed" Mr. Porter that he had likely committed the crime of Resisting Arrest by slipping out of the handcuffs after the officers had left him stranded and handcuffed in his home.

Complaint 9

-

64.    At the conclusion of this interview on December 18, 2018, after blaming Mr. Porter for the unnecessary escalation of the situation caused by the officers' actions, Marshal Rose and Ringer handed Mr. Porter three citations from the events of December 14th, 2018, including Resisting Arrest, Disturbing the Peace, and Obstructing a Peace Officer.

65.    Neither Marshal Rose nor Ringer made any mention of having left Mr. Porter handcuffed for 1-2 hours in his home when they completed their official written Narrative Reports of this incident.

## V. VIOLATION OF CLEARLY ESTABLISHED LAW

66.    Ringer violated Mr. Porter's and KRP's constitutional rights to be free from unreasonable searches and seizures and their constitutional right to privacy when Ringer entered the Porter residence without a warrant and without Mr. Porter's consent in response to a noise complaint and in the absence of exigent circumstances.

67.    The Officers further violated Mr. Porter's right to be free from unreasonable seizures when they left him unattended and handcuffed in his home for a period of 1-2 hours.

**Count 1 – Violation of Mr. Porter's and KRP's Fourth Amendment Rights- 42 U.S.C. § 1983**

Complaint 10

-

68.     Plaintiff realleges and incorporates all previous paragraphs here as if fully restated in this Claim for Relief.

69.     Ringer entered Mr. Porter and KRP's home without a search or arrest warrant.

70.     Ringer's entry into Mr. Porter and KRP's home constituted a search of the apartment.

71.     Ringer did not have Mr. Porter's or any other person's consent to enter Mr. Porter's home.

72.     Ringer had no reasonable basis to believe that an exception to the warrant requirement was present when he entered Mr. Porter and KRP's home.

73.     At all times relevant hereto, Ringer and the Officers were acting under color of state law in their capacity as law enforcement officers.

74.     At all times relevant hereto, Mr. Porter and KRP had rights clearly established under the Fourth Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment to be free from unreasonable searches and seizures. The entry of Ringer into Mr. Porter's home, as well as Ringer's refusal to leave Mr. Porter's home, violated these rights

75.     Ringer acted with actual malice when entering Mr. Porter's and KRP's home without consent and without a search warrant.

Complaint 11

-

76.     Ringer had actual knowledge of facts or intentionally disregarded facts that created a high probability of injury Mr. Porter and KRP and either deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Mr. Porter and KRP or deliberately proceeded to act with indifference to the high probability of injury to Mr. Porter and KRP.

77.     Mr. Porter was unquestionably seized when the Officers handcuffed him in his home.

78.     Mr. Porter's Fourth Amendment rights were further violated when the Officers handcuffed him and left him unattended in his home for a period of 1-2 hours.

79.     Mr. Porter and KRP suffered damages as a result of these actions through deprivation of their constitutionally protected rights as well as emotional distress, discomfort, and annoyance.

80.     The emotional distress, discomfort, and annoyance suffered by Mr. Porter and KRP was a reasonably foreseeable consequence of the defendants' actions.

**Count 2 – Violation of Article II Section 11 of the Montana State Constitution -**

**Right to be Free from Unreasonable Searches and Seizures**

81.     Plaintiff realleges and incorporates all prior paragraphs here as if fully restated in this Claim for Relief.

82.     At all times relevant hereto Mr. Porter and KRP had rights clearly

established under Article II Section 11 of the Montana State Constitution. The warrantless entry of Ringer into Mr. Porter's home violated Mr. Porter's and KRP's Montana State Constitutional rights to be free from Unreasonable Searches and Seizures.

83.    Mr. Porter's rights under Article II Section 11 of the Montana State Constitution were further violated when the Officers handcuffed him and left him unattended in his home for a period of 1-2 hours.

84.    Mr. Porter and KRP suffered damages as a result of these actions through deprivation of their rights as well as emotional distress, discomfort, and annoyance.

85.    The emotional distress, discomfort, and annoyance suffered by Mr. Porter and KRP was a reasonably foreseeable consequence of the defendants' actions.

## Count 3 – Violation of Article II Section 10 of the Montana State Constitution - Right to Privacy

86.    Plaintiff realleges and incorporates all prior paragraphs here as if fully restated in this Claim for Relief.

87.    At all times relevant hereto Mr. Porter and KRP had a clearly established right to privacy under Article II Section 10 of the Montana State Constitution.

88.    Ringer's entry into and refusal to leave Mr. Porter's apartment, without a warrant and without Mr. Porter's consent, violated Mr. Porter's and KRP's clearly

Complaint 13

-

established right to privacy.

89.     Mr. Porter and KRP suffered damages as a result of Ringer's actions including violation of their rights and emotional distress, discomfort, and annoyance.

## Count 4 - False Imprisonment

90.     Plaintiff realleges and incorporates all prior paragraphs here as if fully restated in this Claim for Relief.

91.     Ringer, Marshal Rose, and Ravalli County Sheriff's officers, Lieutenant Jon Moles and Deputy Dan Mendonca violated the personal liberty of Mr. Porter when they handcuffed Mr. Porter and left Mr. Porter in his apartment for a period of one to two hours.

92.     The above conduct caused Mr. Porter severe emotional distress, discomfort, and annoyance as well as physical pain and damage to his person.

## Count 5 - Abuse of Process

93.     Plaintiff realleges and incorporates all prior paragraphs here as if fully restated in this Claim for Relief.

94.     Ringer and Marshal Rose committed abuse of process by citing Mr. Porter for three criminal charges: disturbing the peace, resisting arrest, and obstructing a police officer; with an improper motive, including at least the motive of preventing him

from filing a civil suit against the officers for their tortious conduct described above.

95. The process of criminal citation was not intended to dissuade or otherwise prevent citizens from seeking redress for tortious conduct committed by peace officers.

96. Ringer and Marshal Rose acted with actual malice.

97. Ringer and Marshal Rose had actual knowledge of facts or intentionally disregarded facts that created a high probability of injury Mr. Porter and either deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Mr. Porter or deliberately proceeded to act with indifference to the high probability of injury to Mr. Porter.

98. Mr. Porter suffered damages as a result of the abuse of process described above.

99. Mr. Porter faced criminal charges as a result of the abuse of process. As a result of this abuse he lost time and liberty in the course of resolving these charges and suffered detrimental effects to his reputation and employment prospects.

100. Mr. Porter also suffered emotional distress, discomfort, and annoyance as a result of the abuse of process committed by Ringer and Marshal Rose.

101. The emotional distress, discomfort, and annoyance suffered by Mr. Porter was a reasonably foreseeable consequence of the defendants' actions.

### Count 6 – Negligent Infliction of Emotional Distress

102. Plaintiff realleges and incorporates all prior paragraphs here as if fully

Complaint 15

-

restated in this Claim for Relief.

103.     Mr. Porter and KRP suffered severe and serious emotional distress as a result of the Ringer's and Officers' actions of handcuffing Mr. Porter and subsequently leaving the scene of the incident without removing the handcuffs.

104.     Ringer and Officers did not return to the scene where they had left Mr. Porter handcuffed for a period of 1-2 hours.

105.     Ringer and the Officers acted at least negligently by leaving Mr. Porter handcuffed and unsupervised in his home.

106.     During the time period where the Ringer and the Officers left Mr. Porter handcuffed in his home, Mr. Porter was unable to care for KRP who was also present in the apartment.

107.     The serious and severe emotional distress suffered by Mr. Porter and KRP was a reasonably foreseeable consequence of Ringer and the Officers leaving Mr. Porter handcuffed in his apartment and unable to care for KRP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages, relief and judgment against the Defendants to be proved at a jury trial as follows:

1.     Compensatory damages to be proven at the time of trial, including but not limited to the reasonable costs of medical care and psychological care;

Complaint 16

-

2.      Compensatory damages to be proven at the time of trial for physical pain and suffering;

3.      Compensatory damages to be proven at the time of trial for emotional distress;

4.      For special damages;

5.      For punitive damages;

6.      For costs of suit and attorney's fees (copy of Fee Agreements attached as Exhibit A and B);

7.      For declaratory judgment that Defendants' policies, practices and actions as alleged in this complaint violated Plaintiffs' rights under the United States and Montana State Constitutions.

8.      For such other relief as the Court deems just and proper.

   DATED this 18th day of August, 2020.

                              KRIS A. MCLEAN LAW FIRM, PLLC

                              /s/ Kris A. McLean
                              Kris A. McLean
                              Attorney for Plaintiff

Complaint 17

-